IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ENERGY FUTURE HOLDINGS CORP., et al.,<br><br>Debtors.<br><br>-------------------------------------------------------<br><br>NEXTERA ENERGY, INC,<br><br>       Appellant,<br><br>  v.<br><br>ELLIOTT ASSOCIATES, L.P., ELLIOTT INTERNATIONAL, L.P., THE LIVERPOOL LIMITED PARTNERSHIP, UMB BANK, N.A., AND THE EFH PLAN ADMINISTRATOR BOARD,<br><br>       Appellees. | Chapter 11<br><br>Bankruptcy Case No. 14-10979(CSS)<br><br>(Jointly Administered)<br><br><br><br>Civil Action No. 18-01253-RGA |

MEMORANDUM OPINION

Matthew B. McGuire, LANDIS RATH & COBB LLP, Wilmington, DE; Andrew Rosenblatt, Eric Daucher (argued), NORTON ROSE FULBRIGHT US LLP, New York, NY; Attorneys for Appellant.

Erin R. Fay, BAYARD, P.A., Wilmington, DE; Gregg M. Galardi (argued), ROPES & GRAY LLP, New York, NY; Attorneys for Appellees UMB Bank, N.A., as Indenture Trustee, Elliott Associates, L.P., Elliott International, L.P., and The Liverpool Limited Partnership.

Jason M. Madron, RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE; Mark McKane (argued), KIRKLAND & ELLIS LLP, San Francisco, CA; McClain Thompson, KIRKLAND & ELLIS LLP, Washington, DC; Attorneys for Appellee the EFH Plan Administrator Board.

September 30, 2019

**ANDREWS, U.S. DISTRICT JUDGE:**

This is an appeal from an order of the Bankruptcy Court denying Appellant NextEra Energy's request for $60,000,000 in administrative expenses. The Bankruptcy Court denied NextEra's request for two independent reasons. First, the Bankruptcy Court granted summary judgment that NextEra had relinquished any claim to administrative expenses by contract. Second, the Bankruptcy Court granted a motion to dismiss, denying NextEra's administrative expense claims under 11 U.S.C. § 503(b)(1)(A).

## I. JURISDICTION

The Bankruptcy Court had jurisdiction under 28 U.S.C. §§ 157 and 1334(b). This Court has appellate jurisdiction pursuant to 28 U.S.C. § 158(a)(1).

## II. BACKGROUND

The instant dispute arises out of an effort by NextEra to assert an administrative expense claim with respect to its failed attempt to purchase an interest in Oncor Electric Delivery Company from Debtors Energy Future Holdings Corporation and Energy Future Intermediate Holding Company LLC. Debtors had marketed their roughly 80% economic interest in Oncor after initiating Chapter 11 bankruptcy proceedings. (D.I. 1-2 at 3-4). On July 29, 2016, Debtors executed the Merger Agreement with NextEra under which NextEra would purchase Debtors' economic interest in Oncor. (*Id.*). The Merger Agreement provided that NextEra would pay Debtors' estates $9.5 billion (subsequently increased to $9.8 billion) in consideration. (D.I. 26 at A515).[1]

---

[1] Citations formatted as "A__" are to the pages of the Appendix to Opening Brief of Appellant NextEra Energy, Inc. (*See* D.I. 25 & 26).

1

The transaction required the approval of the Public Utility Commission of Texas ("PUCT"). Consequently, Oncor and NextEra submitted their joint change of control application for approval to PUCT on October 31, 2016. (D.I. 1-2 at 5). The application asked PUCT to eliminate certain requirements that were part of a regulatory "ring-fence." (*Id.*). NextEra considered these requirements "deal killers" and when PUCT denied the application citing, among other things, those requirements, NextEra began a series of ineffective rehearing requests and appeals. (*Id.* at 5-6). Despite PUCT's repeated rejections, NextEra did not seek to terminate the Merger Agreement, leaving the Oncor interests unsold while Debtors incurred about $50 million in interest payments and professional fees per month. (*See id.* at 6-7; D.I. 24 at 30 n.17; D.I. 33 at 30). After several months of these payments and with no chance of PUCT's approval of the change of control application, Debtors terminated the Merger Agreement and turned their efforts toward closing an agreement with a different purchaser. (D.I. 1-2 at 7-8).

The Merger Agreement required Debtors to pay NextEra a termination fee of $275 million under specific circumstances. As originally approved by the Bankruptcy Court, the termination fee provision triggered the payment of the fee if NextEra failed to ultimately obtain the Debtors' interest in Oncor and instead Debtors sold that interest to another party. (D.I. 24 at 7). The fee was subject to certain exceptions, one of which was that, if PUCT declined to approve the merger, and NextEra terminated the agreement, the fee would not be owed. If PUCT declined to approve the merger and the Debtors terminated the agreement, however, then the fee would be owed. The provision did not set a deadline by which PUCT approval had to be secured. *In re Energy Future Holdings Corp.*, 904 F.3d 298, 304 (3d Cir. 2018), *cert. denied*, 139 S.Ct. 1620 (2019). The lack of a deadline meant that NextEra had no incentive to terminate the

2

agreement and instead had motivation to continue to appeal, however futile, until Debtors were forced to terminate the agreement and to trigger the fee. *Id.*

Upon application made in July 2017, the Bankruptcy Court reconsidered its earlier approval of the termination fee provision. It found that it "'had a fundamental misunderstanding of the critical facts when it initially approved the termination fee' because it was unaware that the Merger Agreement did not set a date by which PUCT approval had to be obtained." *In re Energy Future Holdings Corp.*, 904 F.3d at 311 (cleaned up). The Bankruptcy Court amended its approval order to state that if PUCT denied approval, the fee would not be triggered "regardless of whether the Debtors or NextEra subsequently terminate[d] the Merger Agreement." *Id.* at 307. This meant that NextEra did not receive the termination fee.

While the litigation about the reconsideration of the termination fee was pending appeal, NextEra filed an application for administrative expenses seeking reimbursement of $60 million of out-of-pocket expenses incurred in its efforts to consummate the Merger Agreement. (D.I. 24 at 14; *see* D.I. 26 at A512-A534). Appellees filed a joint motion for summary judgment and to dismiss NextEra's administrative expense application. (D.I. 24 at 14). The Bankruptcy Court, on August 1, 2018, granted the summary judgment motion, finding that, under the "plain language of the Merger Agreement," NextEra was barred from seeking an administrative expense claim regarding any work performed relating to the failed NextEra transaction. (D.I. 1-2 at 28). Alternatively, the Bankruptcy Court held that NextEra did not state a claim for administrative expenses under either 11 U.S.C. § 503(b)(1)(A) or (b)(3)(D), regardless of the interpretation of the Merger Agreement, and thus granted the motion to dismiss. (*Id.*). NextEra appealed to this Court. (D.I. 1). It challenges the summary judgment ruling and the motion to dismiss ruling as to

3

subsection (b)(1)(A) but not as to (b)(3)(D). I agree with the motion to dismiss ruling and therefore do not need to address the summary judgment ruling.

## III. STANDARD OF REVIEW

This Court reviews the Bankruptcy Court's grant of the motion to dismiss *de novo*. *See Witasick v. Minn. Mutual Life Ins. Co.*, 803 F.3d 184, 191-92 (3d Cir. 2015).

## IV. ANALYSIS

### A. Administrative Expense Claim under 11 U.S.C. § 503(b)(1)(A)

The Bankruptcy Court held that NextEra's claim for administrative expenses under 11 U.S.C. § 503(b)(1)(A) fails because NextEra's expenses are not considered administrative expenses under that provision of the Bankruptcy Code. (D.I. 1-2 at 19). I agree. In relevant part, § 503(b)(1)(A) states that "administrative expenses" are "the actual, necessary costs and expenses of preserving the estate." The Third Circuit applies a two-factor test to determine if administrative expense treatment under the statute is appropriate. *See In re O'Brien Environmental Energy, Inc.*, 181 F.3d 527, 532-33 (3d Cir. 1999). A qualifying expense (1) "must arise from a transaction with the debtor, and (2) the consideration supporting the claimant's right to payment must be beneficial" to the debtor's estate. *Id.* (cleaned up).

The parties dispute as to whether the Merger Agreement is a proper transaction to satisfy the first factor of the *O'Brien* test. (D.I. 24 at 25; D.I. 27 at 29-31). Regardless of the outcome of that dispute (including the interpretation of the Merger Agreement and any administrative expenses "addressed" in the Plan of Reorganization), NextEra cannot meet the second factor.

The second factor of the test requires that NextEra "show that the fees were actually necessary to preserve the value of the estate[s]." *O'Brien*, 181 F.3d at 535. It is a "heavy burden" to demonstrate that the expenses incurred "actual[ly] benefit[ed]" the estates and that they were

4

"necessary to preserve the value of the estate[s'] assets." *Id.* at 533 (quoting the Bankruptcy Court). NextEra cannot meet this burden.

NextEra argues that it provided a benefit to the estates by working diligently to close the merger transaction with the Debtors. (D.I. 24 at 26). NextEra states that "had . . . [it] been permitted to close" the transaction, it would have injected approximately $9.8 billion into the estates. (*Id.* at 29). But this prospective benefit to the estates did not occur and therefore was not an "actual" benefit to the estates.

NextEra further argues that it conferred a benefit to the estates even though the transaction did not close, relying on *In re Women First Healthcare, Inc.*, 332 B.R. 115 (Bankr. D. Del. 2005). (D.I. 24 at 27-28). NextEra spends most of its briefing related to its § 503(b)(1)(A) claim analogizing this case to *Women First* and stating that it is similarly entitled to administrative expenses for its efforts in trying to close the transaction. (*Id.* at 27-30). The two cases are factually dissimilar. In *Women First*, the failed asset sale was followed by a successful asset sale for an extra $2.5 million. *Women First*, 332 B.R. at 122. Thus, in *Women First* there was an actual benefit to the estate. But even if comparison to *Women First* was appropriate, NextEra does not articulate the actual, necessary benefits to the preservation of the Debtors' estates that its efforts provided. Instead, NextEra refers only to "benefits" broadly. (D.I. 24 at 26, 28-30; D.I. 29 at 5-6; *see* D.I. 26 at A529-A530). Without an actual and necessary benefit to the estates, NextEra cannot meet the high burden of § 503(b)(1)(A).

NextEra points out that the Third Circuit recognized that the termination fee provision in the Merger Agreement benefitted the Debtors' estates by causing NextEra to offer the highest bid. (D.I. 24 at 29). That benefit, however, cannot be considered "in a vacuum." *In re Energy Future Holdings*, 904 F.3d at 314. Under the Third Circuit's balancing, the since-reconsidered

termination fee provision had the potential to be disastrous (because it did not account for the stalemate between NextEra and PUCT), and that risk meant that the "[f]ee was not necessary to preserve the value of Debtors' estates." *Id.* at 315. Thus, any benefit from the termination fee provision is insufficient under the *O'Brien* standard.

A similar balancing analysis can be used for NextEra's remaining claim of benefit. NextEra argues that its work on the failed transaction provided the "structural framework and regulatory approval roadmap" for the eventual successful deal with Sempra. (D.I. 24 at 35). I assume this is the case, but it does not matter. Any roadmap that helped the Sempra deal go through is outweighed by NextEra's actions regarding that exact regulatory approval. When PUCT denied NextEra's application for regulatory approval over certain "deal-killer" governance terms, NextEra would not compromise. (D.I. 1-2 at 5). NextEra continued to request rehearings, even after PUCT had made it clear that it would not approve the application on NextEra's terms and that the transaction would not go through. (*Id.* at 6). NextEra then pursued "fruitless appeals" in Texas state court. (D.I. 27 at 32).

Each month that NextEra continued on this dead-end path, the Debtors incurred $50 million in interest obligations to secured lenders and professional fees. (D.I. 24 at 30 n.17). After several months, Debtors had no choice but to officially terminate the stalled deal with NextEra and enter into an alternative transaction for $350 million less. (D.I. 33 at 55). The decrease in value and the monthly interest payment obligations totaled a loss of approximately $600-to-700 million to the estates. (*Id.* at 46). This loss to the Debtors' estates greatly outweighs the benefit that NextEra claims to have provided. Rather than "preserving" the estates, NextEra diminished them.

## B. Third Circuit's Reconsideration Ruling

Despite not providing an actual and necessary benefit to the preservation of the Debtors' estates, NextEra argues that the Third Circuit's ruling in the reconsideration appeal "requires" that I reverse the Bankruptcy Court's dismissal of its administrative expense application. (D.I. 24 at 22). The Third Circuit's opinion states, "When a court reconsiders a prior decision, it must 'take appropriate steps so that the parties are not prejudiced by reliance on the prior ruling.'" *In re Energy Future Holdings*, 904 F.3d at 316 (cleaned up). The Court concluded that the Bankruptcy Court properly did so by using a heightened standard when it reviewed the reconsideration order under Federal Rule of Civil Procedure 59. *Id.* NextEra conflates this requirement with a separate statement by the Third Circuit: "NextEra . . . has an alternative way to seek reimbursement for [its] expenses" in its administrative expense application. *Id.* NextEra takes this to mean that the Third Circuit requires that its administrative expense claims under 11 U.S.C. § 503(b)(1)(A) be allowed to prevent "any prejudice resulting from its reliance on" the Bankruptcy Court's order of approval. (D.I. 24 at 22).

NextEra reads too much weight into these two sentences. The Third Circuit was not mandating that NextEra's expense application be allowed, nor was the Third Circuit concluding that, if it were not, NextEra would be prejudiced. The Third Circuit was simply articulating that NextEra had an "alternative way to seek reimbursement" other than the termination fee that was at issue in that appeal. The opinion identified the relevant procedure but did not purport to evaluate the merits of an application made pursuant to that procedure. Therefore, the Third Circuit's reconsideration opinion does not require that this Court reverse the Bankruptcy Court's rejection of NextEra's expense application.

7

## V. CONCLUSION

For the reasons above, I affirm the Bankruptcy Court's Order granting Appellees' Motion to Dismiss NextEra's administrative expense claim under 11 U.S.C. § 503(b)(1)(A).

A separate order will be entered.